IN THE MATTER OF THE APPLICATION OF THE DELA-WARE, LACKAWANNA AND WESTERN RAILROAD COM-PANY FOR AUTHORITY TO DISCONTINUE OR RE-SCHEDULE CERTAIN PASSENGER TRAINS ON THE BOONTON BRANCH (INCLUDING THE WASHINGTON LINE AND THE SUSSEX BRANCH).

Argued October 14, 1957—Decided November 25, 1957.

Mr. *Augustus Nasmith* argued the cause for appellant, The Delaware, Lackawanna and Western Railroad Company.

Mr. *Howard T. Rosen* argued the cause for respondent Board of Public Utility Commissioners, etc. (*Mr. Grover C. Richman, Jr.,* Attorney-General of New Jersey, attorney; *Mr. Howard T. Rosen,* Deputy Attorney-General, of counsel and on the brief).

The opinion of the court was delivered by

WEINTRAUB, C. J.   Appellant railroad filed an application with the Board of Public Utility Commissioners requesting a reduction in passenger train service on its Boonton Line. During the proceedings, conferences were held between the railroad and Boonton Line Transportation Association, consisting of officials of Morris and Essex Counties and of a number of municipalities, which had opposed the application, and there resulted an agreement whereby the railroad sought lesser relief with the proviso that if the Board acted favorably the railroad would not apply for further curtailment for a period of four years. Representatives of municipalities not within the association also endorsed the arrangement.

On April 3, 1957 Senate Concurrent Resolution No. 20 was filed with the Secretary of State. The final hearing in this matter occurred on April 29, 1957, at which reference was made to the resolution. The provisions of the Concurrent Resolution appear in *In re New York, Susquehanna*

*and Western Railroad Company,* 25 *N. J.* 343 (1957),
decided this day. On July 17, 1957 the Board filed its
Decision and Order in which it concluded:

"Such a determination and permission by the Board to put into
effect the reduced schedule would run counter to the purpose de-
clared by the Legislature in the Concurrent Resolution. The intent
of the Legislature that passenger rail services should temporarily
be continued as it existed at the time of the adoption of the
Concurrent Resolution, without abandonment or curtailment, is clear.

Therefore, the Board in conformity with the policy declared by
the Legislature suspends all further proceedings on the application
before it until the presentation of the final report of the Metro-
politan Rapid Transit Commission to the Governors and Legisla-
tures of New York and New Jersey and holds this proceeding open
so that thereafter the parties to the proceeding may offer such
further evidence as they may deem necessary."

The Appellate Division allowed an appeal from the inter-
locutory order and we certified the matter before considera-
tion of it by that court.

As in *In re New York, Susquehanna and Western Railroad
Company, supra,* the Board did not exercise its discretion
but rather deemed itself bound by the Concurrent Resolution,
and hence for the reasons set forth in that opinion the
Decision and Order must be reversed and the matter remanded
to the Board for further proceedings not inconsistent with
the views therein expressed.

The railroad asks us to order the Board to approve the
revised schedule, and this upon two propositions: (1) the
Board is bound by the agreement between the railroad and
the association and other municipalities; and (2) the basic
facts pointing inexorably to a grant of the petition as
amended, we should exercise original jurisdiction.

The first proposition is without substance. Wholly
apart from the express provision in the agreement condition-
ing its effectiveness upon approval of the Board, the Board
of course could not be bound by the mentioned agreement.
The duty to determine public necessity and convenience rests
upon the Board, and those who appear before it to oppose
the application, even if accorded the status of parties to the
proceeding (see *Public Service Coordinated Transport v.
State,* 5 *N. J.* 196, 210 (1950)) cannot relieve the Board

of its duty by a stipulation with the carrier, and this is so no matter how extensive may be the representation of commuters by the consenting parties.

With respect to the second proposition, the basic regulatory power was delegated to the Board. *Pennsylvania-Reading Seashore Lines v. Board of Public Utility Commissioners,* 5 *N. J.* 114, 119–120 (1950), *certiorari* denied *Brotherhood of R. Trainmen v. Pennsylvania-Reading Seashore Lines,* 340 *U. S.* 876, 71 *S. Ct.* 122, 95 *L. Ed.* 637 (1950); *cf. Pennsylvania Railroad Co. v. Board of Public Utility Commissioners,* 11 *N. J.* 43, 53 (1952). The respective roles of the Board and the court were succinctly delineated in *In re Greenville Bus Co.,* 17 *N. J.* 131, 137 (1954):

"In passing upon the appellants' contentions we must ever bear in mind that ours is not the function of making original factual findings and policy determinations as to whether the operation of the new bus line is necessary and proper for the public convenience and will properly serve the public interest. That function has been appropriately vested by the Legislature in the Board of Public Utility Commissioners which applies its experienced administrative judgment to the subject at hand. Its determination carries with it the presumption of correctness (*In re New Jersey Power & Light Co.,* 9 *N. J.* 498, 508 (1952)), and on judicial review the court will not substitute its independent judgment for that of the board but will confine its inquiry to the ascertainment of whether the evidence before the board furnished a reasonable basis for its action. See *Rahway Valley Railroad Co. v. Board of Public Utility Com'rs.,* 127 *N. J. L.* 164, 167 (*Sup. Ct.* 1941); *New Jersey Power & Light Co. v. Borough of Butler,* 4 *N. J. Super.* 270, 279 (*App. Div.* 1949). *Cf. New Jersey Bell Tel. Co. v. Communications Workers, etc., supra,* 5 *N. J.* [354], *at page* 377; *R. S.* 48:2–46; *R. R.* 4:88–13."

We accordingly will not consider the ultimate merits until the Board shall have acted upon them. See also *Annotation,* 94 *L. Ed.* 806 (1950).

The Decision and Order is reversed and the matter is remanded to the Board for further proceedings not inconsistent with this opinion.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices HEHER, BURLING, JACOBS and FRANCIS—5.

*For affirmance*—None.